Thank you, your honors, and may it please the court, counsel for the government. I'd like to focus my time on two specific issues, unless the court has questions otherwise. I'd like to focus on the recklessness and the creation of risk under 2L1.1b6. I'd like to focus on the causation under 2L1.1b7. This is a case where from the moment Ms. Cooley left Tucson, to the moment she picked up the illegal aliens, to the moment she continued to drive back towards Tucson, she did nothing different than what a typical run-of-the-mill alien smuggling defendant did. Only when the illegal aliens or undocumented aliens opened the back door to her vehicle and began to jump out did this incident depart from your typical run-of-the-mill alien smuggling event. And what happened next was not a direct result of Ms. Cooley's conduct, and it was not Ms. Cooley's recklessness that created the situation that led to the substantial or serious physical injury. Your Honor, let me ask you a factual question. As I read the record, at least reading it right and most favorable to the government, it takes about 30 seconds for all of the passengers to jump out. Is that fair? I would agree. I think between 25 and 30, depending on the speed. And she continues along at 50 miles an hour during that time period. And the record appears to support the conclusion that she knew they were jumping out. She didn't know in advance that they planned to jump out, but they were. So why doesn't failing to stop or slow down at that point, why isn't that the conduct that gives rise to the recklessness charge and the causation issues? Sure. And I think that's a great question. It's something the government relied on, and it's something the district court certainly relied on in sentencing Ms. Cooley and implying the enhancement. But 2L1.1b6 says, first and foremost, the conduct must be reckless. And second, that reckless conduct must be what created the risk. It has to be read together one before the other, because it comes one before the other. That's the way the guideline is written. Well, why doesn't it create the risk at least for the last person jumping out? The first person, I understand the first person jumping out would have faced the same risk without her conduct. But as to the fifth one, I'll finish quickly.  As to the fifth one, it seems to me she at least added to the risk. So I'd like to correct, first and foremost, there's four aliens. Four, I'm sorry. And the person who created the risk was the initial alien who opened the door. And then each individual alien who jumped out was creating additional risk, creating the risk for themselves. What Ms. Cooley did was fail to mitigate the risk. She certainly had an opportunity to slow down or slam on the brakes or stop as the district court castigated her for failing to do. But that is failure to mitigate. That's not creation. Creation is cause to bring about. If that door is opened and the aliens think better of it, and they think I shouldn't jump out of the vehicle, it's going 50 miles an hour, I'm going to hurt myself. They've created the risk by way of opening the door, but they haven't then taken the continued step of jumping out. And nothing Ms. Cooley has done is adding to the risk created by the individual decision, unilateral decision I might add, by these aliens to open the door and then subsequently jump out of a moving vehicle. Counsel, I guess what I'm concerned about is this all happened so quickly. What role, if any, should that play in our analysis of what Ms. Cooley did or did not do? In other words, if you're driving 50 miles an hour and all of a sudden four people jump out, is that something that she would have obviously been aware of? I think that's a wonderful question because recklessness requires awareness of and conscious disregard of a known risk such that it is a gross deviation from the standard of care. And in this case, in a situation where I think the district court knew that Ms. Cooley had just moved from Chicago to Tucson. That in and of itself says something. She had just gotten this job at this sort of run down hotel or motel. She gets asked to go down to the border to pick up these aliens by her co-defendant who really was the principal in all of this, even though Ms. Cooley was driving. It was directed by the co-defendant. She doesn't know the area. It's dark. It's at night. She's going 50 miles an hour and all of a sudden, and by the way, she has a two-year-old in the car, and all of a sudden the door opens and I can't imagine the chaos that was going on in that vehicle in that moment. And you have, at most, a period of 30 seconds. I think if you took the most conservative estimate of her speed at 45 miles an hour, which, by the way, was the speed limit. She was not aggressively driving or driving in excess of the speed limit. That's roughly 70 feet a second, 1,800 feet were the distance between the aliens. It's 26, 27 seconds of gap there. And so in order to process the risk, in order to be aware of and then consciously disregard that risk, I think that's a big ask for somebody who's in a completely brand new environment. Scalia. Well, she's smuggling aliens. Let's not, you know, sugarcoat what's going on here. And police are following her, correct? Fisher. But she doesn't know that. Scalia. How do we know she doesn't know that? Fisher. Because specifically, the agents did not turn their lights on, did not turn their sirens on. Scalia. I understand that, but they were, at least for part of it, the agents say the car is within sight of them. They lose sight of the car, of the van at some point, but they can see it at some point. So why can't we, even if they didn't turn their lights on, why doesn't this record lead to the inference that she kept going because there were police or agents following her? Fisher. I think the record is clear that the vehicle in which the agent was driving never got closer than three quarters of a mile as they were on that road. Scalia. But the record is also clear that they could see her vehicle, and it was during the time that the vehicle wasn't visible that the passengers jumped out, correct? Fisher. Correct. But again, three quarters of a mile distance, if you're looking in your rearview mirror, making that out to be a Border Patrol vehicle at 9 o'clock at night, I would suggest to you there's no possible way that the driver could do that. You could make a surprise that. Counsel, this is Judge Gould, if I could direct a question for you. I thought the driver was aware that the passengers were in the backseat. Fisher. Certainly the driver was aware of the passengers in the backseat, but I think the question was... Wait, wait. So if the driver's aware of that, then the driver has reason to believe the door has been opened. Even though the driver didn't initiate opening the door, why isn't the driver creating the risk to serious injury by not stopping the car or slowing down? Gould. I think that where I would disagree with the word creation is nothing she's doing in that moment is causing or bringing about injury or risk of injury. Not until the person And so what she's doing is failing to mitigate, failing to slow down, failing to maybe lessen the risk were somebody to jump out. But she's not creating the risk at that point. Very briefly, I don't have much time left. If she wasn't, if she wasn't creating the risk when the first person jumped out, wouldn't she be creating the risk when the stream of others jump out? I don't think so, because I think each individual person is making an individual decision. And the second alien jumping, the third alien jumping, the fourth alien jumping, whether they're three seconds apart, five seconds apart, seven seconds apart, however many seconds apart they are, that individual alien is making an individual choice to jump from the vehicle. That individual alien is the person creating the risk of their own injury. Certainly if she slows down to 30 miles an hour, if she slows down to 20 miles an hour, is their injury lessened? I would agree. Certainly you're going to suffer less serious injuries if the vehicle is slowed. But there's the creation of that risk occurs the second you jump out of the vehicle, or the aliens jump out of the vehicle, not by way of her continuing to drive. I should save the last 30 seconds for... When you come back up, please answer the question. I assume these aliens knew that police were back there, right? I think that's clear from the record given Ms. Ramos-Martinez's use of a cell phone. The government agents testify that they believe that she was on the phone with a scout up in the mountains. Okay. All right. Save the rest of your time. Such as it is, let's hear from the government. Good morning, and may it please the court. This is Caroline Allen for the United States. We'd ask the court to affirm the sentences in this case. There was no clear error when the court found that the enhancements applied, and there was no abuse of discretion when the court deviated downward and gave a below-guideline sentence to this defendant. I don't think they're challenging the downward departure. Thank you, Judge. So I will start with the B6 enhancements, that's where the court was focusing before. I'd like to first go to a finding that the district court made about the endangerment that the defendant caused to her passengers, which also included her two-year-old child in the vehicle, as well as the defendant's knowledge. This is from 6ER806. So the court did give the defendant some benefit of the doubt about what was going on. He said, I'm going to assume, as I told your attorney, that you didn't tell these folks to jump out of the car. If I assume that, then I have to assume that what you're trying to tell me is you don't know that they were going to jump out, and I'll assume that even to a certain point. But if you're a parent who loves your kids, and you've got a two-year-old son in the back seat, and the rear door opens driving at 50 miles an hour, I don't care where the hell you are, you hit the brakes and figure out what's going on. And you didn't even do that, which tells me you knew darn well those folks were going to jump out of the car, and you kept going. I don't know any other way to read that, Ms. Cooley. You've got a two-year-old child in the back with four strangers, a car door opens at 50 miles an hour in the middle of nowhere, and you kept going. Let me just ask you about the child. If I recall correctly, there was some dispute about whether Ms. Cooley knew that there was an unaccompanied minor in the back seat. But it's her child. Is there really any dispute that she knew that her child was there and was a minor? So a correction for the court. So her child was in the vehicle, but also one of the aliens that she was smuggling was an unaccompanied minor. Okay. So there were two unaccompanied minors? Well, if the court wants to consider the defendant's own child an unaccompanied minor, sure. But how could she be unaccompanied? She was with her mother. I understand. Whether it was characterized that way, whether it was, is different. So we were focusing on one of the aliens that was smuggled was an unaccompanied minor. The defendant conceded at trial and stipulated that there was a minor in the vehicle, not her son, but one of the aliens. So does the statute require knowledge that the person is a minor, or is the statute satisfied simply because statute, the enhancement, simply because the person is a minor? I apologize, Judge. So there is no scienter requirement in that particular guideline. The guideline simply reads that if there is an unaccompanied minor, the enhancement applies. So there is no scienter requirement? There is not, not in the plain language of the guideline. But when we look at what's available in this case, the trial testimony, but also what was provided in response to the PSR objection, there's ample facts to support that there was an unaccompanied minor involved in the smuggling event. There was testimony that was provided that the minor alien was accompanied, and in addition, there was a medical document that was provided in the response to the objection that showed that the hospital didn't know really who this minor was or how to get in contact with anybody. And that information was only provided once the Mexican consulate was able to identify the minor and provide contact information for the father who was in Mexico. So there are sufficient facts to support that there was an unaccompanied minor involved in the smuggling event, and so there was no clear error when the court did make that finding and apply that enhancement. Can I ask you to address the issue of causation? Sure. Does it matter in this case whether we deal with causation in fact or proximate causation? I think that's a great question. Thank you. But when we look at the particular facts of this case, I mean, there's overwhelming facts about this. We have a defendant who is driving at night in an area that she does not know. She's driving at consistent speed of 50 miles an hour. And then based on the facts of what's happening in that car with the door opening, her child in the back seat, and these people start jumping out one at a time. They're not jumping out as a cluster, and we know that based on the distance from where the first person landed to where the last person landed. The defendant knew that these people were jumping out, if not by the first person, definitely by the last. Yeah, but I'm asking a different question, and I think you're hinting at your answer, but I want to make sure I get it. Do you think that this record supports an inference of proximate causation, which would be a more demanding standard than causation in fact? I think the record supports any causation finding that the court wants to make. And so if we look to Teresina Elias, a similar question was posed to the court, I believe a different panel of this court, but the court ultimately found that under any standard of causation. Well, that's what I'm asking. That's what I'm asking. Your friends say, well, maybe it's causation in fact, maybe not, but it's not proximate causation, and they say that's what the statute requires. What I'm trying to figure out is if we were to apply a proximate causation requirement here, would it affect the result? No, it would not. Based on the particular facts of this case, any standard of causation would be met. But even if the court wanted to drill down, the court wouldn't need to based on what it did in Teresina, because under any standard, it is a— Well, see, what Teresina said was we don't have to decide the standard, because under any standard, the record supports the finding. The more demanding standard is proximate cause. So I'm asking you whether under that standard, the records would support a finding of causation. I think you've said yes.  But I don't think—I don't think the case stands for the proposition that in every case we look for any standard. We just—I'm trying to figure out whether this meets the more demanding standard. I think you've answered it. Thank you. If I could have just a moment. Thank you. Additionally, when looking at 2L1B1B7 for the causation question, I think it would be helpful to note that there is no causation requirement in the guideline itself. So when we look at the plain language, there is no causation that is required from the reading of the plain language of the guideline. So we would suggest that that is the way that the guideline should be read, and causation should not be read into the guideline when it doesn't exist there.  The district court didn't clearly err when it found that the endangerment enhancement of the B6 as well as the injury sustained enhancement B7 applied in this case. We would ask that the court affirm based on the plain language of the guidelines and also based on the facts that I know this court is well aware of. Unless there are questions. Other questions by my colleagues? Hearing none, we thank you. Your friend has a very brief amount of time for rebuttal. I'd like to address the questions the court was asking with respect to causation and what standard the court should apply. Whether the court applies but-for causation or proximate causation, the government's argument fails. The government cites to Burridge to suggest that the but-for causation is applicable in this case. In Burridge, the Supreme Court held the defendant's acts in distributing drugs that led to a death must be independently sufficient to cause the death, not just a contributing factor. Under proximate cause, obviously a more exacting standard, this would not meet that definition. But under but-for causation, what Ms. Cooley did in failing to slow down was merely a contributing factor to these alien's injuries, not the substantially independently sufficient act that led to these injuries. Very well. Questions by my colleague? We thank both counsel for your argument. The case of United States v. Cooley is submitted.
judges: GOULD, SMITH, HURWITZ